## Danville Light, Power & Traction Company v. Commonwealth.

### (Decided April 22, 1921.)

### Appeal from Franklin Circuit Court.

1. Corporations—Crimes and Criminal Prosecutions—Failure to File Report—Use of Word "Willful."—Whatever may be the technical meaning of the word "willful" as used in section 4087, Ky. Stats., providing a penalty for the "willful failure or refusal" of certain corporations to file a report each year before a designated time, the use of the word "willful" therein imports on its face to mean that the mere failure to file will not necessarily constitute guilt, and the statute will therefore be interpreted in the light of the facts and circumstances surrounding the particular case.

2. Corporations—Failure to File Report.—The uncontroverted facts showing that the agent of a corporation, whose duty it was to file such report, had the filing of same in mind and had a memorandum about it, including the date it was required to be filed, and had inquired from a subordinate official concerning it and was informed that the report had actually been made, and then checked off the same from his memorandum and actually believed in good faith that it had been filed, and immediately after he learned it had not, prepared and filed the same, the corporation was not guilty under the language of the statute, for it can not be said that one has "willfully" failed to do that which he believes in good faith has already been done.

TALBOTT & WHITLEY for appellant.

CHAS. I. DAWSON, Attorney General; THOS. B. McGREGOR, Assistant Attorney General; VICTOR A. BRADLEY, Commnwealth's Attorney, and PAUL C. GAINES, County Attorney, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellant is a corporation which is required by section 4078, Ky. Stats., to file with the auditor, between the 30th of June and the first of October of each year, a verified statement or report showing certain facts which are

designed to enable the board of valuation and assessment to fix the value of its franchise for taxing purposes.

Section 4087, being part of the same act, provides:

"Any corporation, or officer thereof, willfully failing or refusing to make reports as required by this chapter, shall be deemed guilty of a misdemeanor, and for each offense shall be fined one thousand dollars and fifty dollars for each day the same is not made after October the first of each year."

At the September term, 1918, of the Franklin circuit court appellant was indicted, charged with a willful failure to file the report provided for, and upon a plea of "not guilty," the case was submitted to the court, a jury waived, and a judgment was entered for a fine of $1,400, of which $1,000 was for failure to file before the first of October, and $400 was for the failure to file it for eight days thereafter.

It is admitted that defendant failed to make the report until the 9th day of October, 1917, and in explanation of that failure defendant introduced only one witness, Judge I. R. Kelsoe, whose statements are not con- tradicted.

Judge Kelsoe, we assume, from his testimony, was a legal representative of or connected with the legal department of the operating company—hereinafter referred to. He states that the defendant corporation is one of a large number of small utilities companies operated by the Light and Development Company of St. Louis, an operating company of that city; that the operating company engages as an engineering concern in the management and direction of light, gas, water, heating and refrigerating plants and systems, and does a general engineering management business; that it, as such, has operated appellant company at Danville since the year 1912, and furnishes to it the advantages of advice and assistance of its legal department and engineering department, and such financial advice and assistance and executive management as such operating companies usually do in the management and control of such utilities; that the utilities companies, including appellant, pay for this management, and that the compensation covers the service of the operating company's several departments, including the bookkeeping and accounting department, and legal, financial and executive management of the local utilities concerns; that under this arrangement it was the duty of the operating

company to file the reports required by law to be filed by the local companies; that during the period involved the operating company managed such local companies in Ohio, Kentucky, Illinois, South Dakota, Oklahoma, Texas and Missouri, and the operating company was thereby compelled to file for the different local companies operated by it from 125 to 150 reports during each year; that the operating company kept a folder for each local company operated by it, in which it kept copies of each report filed for such company, and endorsed on the cover of the folder a memorandum showing the reports required to be made and the dates when they were due; that the operating company provided a legal department and an accounting department, with the necessary facilities for giving notice to the local concerns charged with the duty of preparing and filing such reports; that the operating company required all local companies operated by it to report to the St. Louis office all notices received by the local companies, and that when the manager of any local company operated by the operating company received notice of a report to be made, it was required to promptly compile any information within the knowledge of its officials and transmit the same to the St. Louis office of the operating company, there to be completed; that upon receipt of such notices from the local concerns they were referred to the bookkeeping and accounting department of the operating company, and such reports were completed under the supervision of the legal department, and that it was the duty of the latter department to have a complete supervision of the reports and to see that they were in the proper form and made up and filed in time.

He states that the report in question, due on or before October 1, 1917, from appellant company, was marked off of his list of reports to be made as having been made prior to October 1, 1917, and that this was done because of information he had received from R. L. Carpenter, assistant secretary of the operating company that the report had been made; that Carpenter was actively in charge of the work of preparing such reports and personally required to report to the witness regarding same; that it was Carpenter's business and duty to keep the witness advised and informed of such things, and that the information he received from him that the report had been made convinced him that it had been, and that acting upon such information he checked off the report as hav-

ing been made prior to October 1, 1917, and in good faith believed that the report had been so made, and continued to so believe until a few days after the first of October. 1917, when the auditor, Mr. Greene, notified the Danville office, and the manager there wired the St. Louis office, that the report had not been received; that he was still confident that the report had been sent in on time, but upon receiving such information the report was hastily prepared and filed about the 9th of October, just as soon as it could have been after being so advised; that he was so certain that the report had been filed prior to the first of October that he would have been willing to make an affidavit to that effect.

Upon cross-examination he stated that the local manager of the Danville company had furnished the information for the reports of that company before, and was familiar with the date upon which the report should be filed, and that he thought the report had been filed because Mr. Carpenter said so, but later found out that it had not been filed for the reason that the local manager at Danville had not sent to the office of the operating company the data to make up the report because, as complained by the local manager, he had not received from the auditor the blank on which to make the report.

This statute appears first to have been before this court for interpretation in the case of Louisville & Jeffersonville Ferry Co. v. Com., 104 Ky. 726, and the court, at page 736, in defining the word "willful" as used therein, said:

"The term 'willful,' as used in the statute, simply means the voluntary act of a party, as distinguished from coercion, or, in other words, that he was free to report or not to report; and the term 'wilfully failing' can, as we think, have no other rational construction."

But in the same opinion, immediately after so defining the word "willful," the court qualified that definition by the use of the following language:

"It may be that a party in fact believed that the report had been forwarded to the proper officer, or in fact might have been sent, and by accident failed to reach its destination, in which event it would be a failure to report but would not be willful or intentional, for the reason that the party had in good faith attempted to comply with the statute."

That definition, as thus qualified, has since by this court been followed to the extent that the facts of the particular case have been analyzed and applied in determining whether or not there has been such willful failure.

For instance, in the case of Suburban Electric Co. v. Com., 21 R. 1556, the facts were, that in ample time to make out the report and have it filed by the first of October, the defendant gave to its attorney the data necessary to make out the report, and the attorney did before the 20th of September state to the auditor that it would be inconvenient for him to make out the report before the first of October, and requested the auditor to grant him further time, which the auditor did, and the court, while holding that the auditor had no power to suspend the operation of the law or to extend the time, said:

"But under the circumstances of this case, where the party had in good faith, and in ample time, attempted to comply with the statute, the failure brought about by that official's unauthorized extension of time to the agent of the company, who was to do the actual filing, does not seem to us to be a willful failure or refusal to report."

And held that the facts brought it within the exception or qualification stated in the Louisville & Jeffersonville Ferry case quoted above.

The case of United Fuel Gas Co. v. Com., 171 Ky. 525, was a prosecution under this statute. The facts were that the defendant was ready to make the report in due time, when the auditor notified the agent, whose duty it was to make the report, and who had been directed by the corporation to make and file the same, that he must embrace therein and report certain facts which he could not obtain until after the first of October, and it was known both by him and the auditor that the facts so directed to be embraced in the report could not be ascertained by that time, and the court, after referring to the Louisville & Jeffersonville Ferry case and the Suburban Electric Company case, said:

"In this case, the auditor made a requirement, the performance of which each party recognized would require an extension of time in which to report beyond the time when the report was due, and hence was more than a mere granting of permission to defer the filing of the report until after the first day of October. The report was made as soon as the required facts could be gathered.

Under the particular facts of this case, we are of the opinion that the failure of appellant to file its report on or before the first day of October was not willful in the meaning of the statute."

It is therefore apparent from the above decisions that whatever may be the correct technical meaning of the word "willful" as used in this penal statute, it imports on its face to mean that a simple failure to file will not necessarily constitute guilt, and it must therefore be interpreted in the light of the facts and circumstances surrounding the particular case.

The statute was not intended to operate as an instrument of oppression; by its very terms only those corporations "willfully failing or refusing" to file the report within the time are guilty. The use of the word "willful" is convincing that it was not the legislative intent that the mere failure to file should constitute guilt. To so interpret it would be to strike from it the word "willful."

The uncontroverted facts of this case show that the agent of the corporation whose duty it was to file the report, had the filing of the same in mind, that he had a memorandum about it, including the date it was required to be filed, that he had in no sense overlooked it, but, on the contrary, had inquired from a subordinate official concerning it and was informed by him that the report had actually been made, and that he then checked off the same from his memorandum and actually believed, in good faith, it had been filed. Not only so, but as soon as he learned it had not been filed, although he did not even then believe it, the report was hastily made up and filed at the first practicable time. To hold the corporation guilty under these circumstances would be to ignore utterly the word "willful" in the statute, for it can not be said that one has willfully failed to do that which he believes, in good faith, has already been done.

It is not to be understood from what we have said that every trivial, flimsy, or inconsequential reason that may be given will excuse a corporation for not making a report in time. The statute is a valuable one, and its purpose was to require the corporations to furnish to the board of valuation and assessment in ample time the information necessary to enable it to assess for taxation their property, and it should be strictly enforced.

We only mean that the court can not ignore the language of the statute, and will not give to it an unreason-

able meaning when applied to the facts of a particular case.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.